## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     IN CHAMBERS – COURT ORDER

Before the Court is a Motion for Summary Judgment filed by defendant and counterclaimant Jessica Cesaro, who is professionally known as Jessica Haid ("Haid") (Docket No. 115). Also before the Court is a Motion for Partial Summary Judgment filed by plaintiff and counterdefendant Robin Bain ("Bain") (Docket No. 120). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds that these matters are appropriate for decision without oral argument. The hearing calendared for August 10, 2020, is vacated, and the matters taken off calendar.

## I.     Background

Bain alleges that she registered the copyright for the motion picture <u>Nowhereland</u>, which was also distributed as <u>Girl Lost</u> (the "Film"). Bain wrote, produced, directed, and performed in the Film, which was completed in late 2015 or early 2016. Haid appeared in the Film. Bain alleges that Haid asked Bain to allow Haid to add scenes from the Film to her acting reel, but Bain refused, fearing that release of portions of the Film could hinder Bain's efforts to obtain a distribution deal for the film. The Film was exhibited at a number of film festivals in 2016 and distributed on streaming platforms and through other avenues beginning in 2018.[1]

---

[1]     In their respective Statements of Genuine Disputes of Material Fact by Opposing Party, both Haid and Bain "dispute" certain facts by claiming to lack sufficient knowledge to admit or deny a fact and on that basis denying the fact. While such pleading may be common when filing an Answer, it is insufficient in response to a summary judgment motion. <u>See</u> Local Rule 56-3 ("In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

In 2017, after the Film was screened at film festivals, but before a wider commercial release, Haid obtained a watermarked copy of the Film.  Haid retained LA Media Works, Corp. ("LA Media")[2] to edit scenes from the Film to create an acting reel she could submit to casting directors so that Haid could obtain additional acting roles in other productions.  To create the reel, Haid shared the watermarked copy of the Film with LA Media through a Google Drive link.  LA Media removed the watermark from scenes in the film in which Haid appeared when it created the reel.  LA Media created at least two versions of the acting reel, one version was approximately 2 minutes and 50 seconds, and the other was approximately 3 minutes and 39 seconds.  The longer of the two versions of the reel includes approximately 40 clips from the 95 minute film.  All but 2 of the approximately 40 clips are less than 10 seconds in length.  The longer reel includes 1 minute and 9 seconds from a 2 minute and 37 second scene.  That longer scene consists of 3 separate segments from that scene edited together.  LA Media's records indicate that one of the versions was viewed a total of three times.  It is unclear how many times the other version was viewed.

In August 2017, Bain discovered Haid's reel on LA Media's website.  On August 11, 2017, an attorney representing Bain contacted Haid and demanded that she destroy all copies of the Film and to remove the reel from the internet.  Haid did remove the reel from the internet and stated that she did not possess a copy of the Film as of August 31, 2017.  Bain contends that Haid spoliated evidence by destroying all communications concerning the receipt of the watermarked copy of the Film and distribution of the reel.  It also appears that Haid, who describes herself as technologically illiterate, neglected to delete the copy of the Film from Haid's Google Drive.  The copy of the Film saved on Haid's Google Drive listed Haid as the "owner" of the file, a designation Haid believes was generated automatically by Google.  The copy of the Film saved on Haid's Google Drive could be viewed by anyone who received an email with the link and did not require a password to view.

Bain commenced this action on May 16, 2018, and asserted claims for:  (1) copyright infringement; (2) vicarious and/or contributory copyright infringement; (3) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202; and (4) conversion.  The Court granted Haid's Motion to Dismiss the conversion claim.

---

[2]     LA Media has dismissed its Crossclaim against Haid.  Although Bain has settled her claims with LA Media, she has not yet dismissed her claims against LA Media.  Bain previously dismissed her claims against Film Independent, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|----------|----------------------|------|----------------|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

Haid then filed, on August 28, 2018, a Counterclaim against Bain alleging claims for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; (5) unfair business practices pursuant to California Business and Professions Code section 17200; (6) failure to pay minimum wage; (7) failure to pay overtime; (8) failure to pay wages upon discharge; (9) waiting time penalties; (10) failure to provide itemized wage statements; and (11) tortious violation of OSHA and CAL/OSHA requirements to provide a safe work environment. According to the Counterclaim, among other allegations, Bain exposed Haid to unsafe conditions on the film set and, given the length of time Haid was on set, and the daily flat rate Haid was paid, Bain failed to pay Haid minimum wage for her work on the set, failed to pay her for reshoots or promotional work for the Film, and did not provide wage statements required by California law.

The matter languished in arbitration for approximately 16 months before returning to this Court when Bain lacked the funds to pay the required arbitration fees. See Tillman v. Tillman, 825 F.3d 1069 (9th Cir. 2016) (finding an arbitration "had been had" when party could not afford arbitration fees and allowing case to proceed in district court as the only way for claim to be adjudicated). Haid, contending that the portions of the Film used in her acting reel qualify as "fair use," seeks summary judgment on Bain's copyright claims. Haid also claims that she is entitled to summary judgment on Bain's DMCA claim because Bain has no evidence that Haid possessed the required intent for DMCA liability.

Bain's Motion for Partial Summary Judgment contends that Haid's statutory counterclaims 6-11, which allege wage and hour and safety violations, are barred by the applicable three-year statute of limitations because Haid's work on the Film ended on May 3, 2015, and Haid did not file the Counterclaim until August 28, 2018.

## II.   **Legal Standard**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show an absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party does so, the non-moving party must go beyond the pleadings and designate specific facts showing a genuine issue for trial. Id. at 324. The court does "not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir 1999). A "'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|----------|---------------------|------|----------------|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir), cert denied, 493 U.S. 809, 110 S. Ct. 51, 107 L. Ed. 2d 20 (1989) (emphasis in original, citation omitted).

The substantive law governing a claim or defense determines whether a fact is material. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631-32 (9th Cir 1987). The court must view the inferences drawn from the facts "in the light most favorable to the nonmoving party." Id. at 631 (citation omitted). Thus, reasonable doubts about the existence of a factual issue should be resolved against the moving party. Id. at 630-31. However, when the non-moving party's claims are factually "implausible, that party must come forward with more persuasive evidence than would otherwise be [required] . . . ." California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir 1987), cert denied, 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988) (citation omitted). "No longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." Id. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552.

**III.   Analysis**

**A.   Fair Use**

The fair use doctrine provides, in appropriate circumstances, a defense to copyright infringement claims. As explained by the Ninth Circuit, "17 U.S.C. § 107 establishes that fair use of a copyrighted work is not an infringement of copyright . . . ." Seltzer v. Green Day, Inc., 725 F.3d 1170, 1175 (9th Cir. 2013). 17 U.S.C. § 107 provides:

> In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1)   the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2)   the nature of the copyrighted work;
>
> (3)   the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4)   the effect of the use upon the potential market for or value of the copyrighted work.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

17 U.S.C. § 107.  "These four factors must all be explored, and all the results evaluated together, in light of the purposes of copyright."  Seltzer, 725 F.3d at 1175.  Whether the allegedly infringing use of a prior work constitutes fair use "is a mixed question of law and fact . . . ."  Id.  "Where no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts, we may draw those conclusions without usurping the function of the jury."  Id.

### 1.   Purpose and Character of the Use

In providing guidance on the fair use doctrine's "purpose and character of the use" factor, the Supreme Court has explained:

> The central purpose of the [purpose and character of the use inquiry] is . . . whether the new work . . . adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is "transformative."  Although such transformative use is not absolutely necessary for a finding of fair use, the goal of copyright, to promote science and the arts, is generally furthered by the creation of transformative works.  Such works thus lie at the heart of the fair use doctrine's guarantee of breathing space within the confines of copyright, and the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use.

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 114 S. Ct. 1164, 1171, 127 L. Ed. 2d 500 (1994) (citations omitted).  According to the Ninth Circuit:

> In the typical 'non-transformative' case, the use is one which makes no alteration to the expressive content or message of the original work. . . .
>
> In contrast, an allegedly infringing work is typically viewed as transformative as long as new expressive content or message is apparent.  This is so even where . . . the allegedly infringing work makes few physical changes to the original or fails to comment on the original.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

Seltzer, 725 F.3d at 1177.

Here, Haid's reel is transformative.  Unlike the Film, which seeks to tell a story involving the sexual exploitation of women, the reel tells no story.  The reel's purpose is to provide information about Haid's acting abilities so that casting directors may become interested in casting her in other roles.  The reel changes the original work by showing mostly brief portions of selected scenes in a manner that conveys little information about the plot of the film.  This factor therefore weighs strongly in Haid's favor.

## 2.  Nature of the Copyrighted Work

As a work of fiction inspired by important real-life issues, the nature of the Film is entitled to broad copyright protection.  See Campbell, 510 U.S. at 586, 114 S. Ct. at 1175, 127 L. Ed. 2d 500 ("This factor calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied.").  In considering this factor, courts should "consider the extent to which a work has been published." Seltzer, 725 F.3d at 1178.  Here, by the time Haid created the reel, the Film had screened at approximately 6 film festivals, but had not been released commercially.  As a result of both the Film being close to the "core of intended copyright protection" and the limited nature of the Film's release prior to the creation of Haid's reel, the Court concludes that this factor weighs in favor of Bain.

## 3.  Amount and Substantiality of the Portion Used

"The third factor looks to the quantitative amount and qualitative value of the original work used in relation to the justification for that use.  This factor captures the fact that an allegedly infringing work that copies little of the original is likely to be a fair use." Id.  Even the longer version of Haid's reel, at 3 minutes and 39 seconds, comprises less than 4% of the Film's 95 minute length, with all but 2 of the 40 clips lasting less than 10 seconds.  See Sofa Entm't, Inc. v. Dodger Prods., Inc., 709 F.3d 1273, 1279 (9th Cir. 2013) ("[T]he seven-second introduction is hardly qualitatively significant.  [Ed] Sullivan simply identifies the group that is about to perform and the section of his audience to whom the Four Seasons would appeal.  It is doubtful that the clip on its own qualifies for copyright protection, much less as a qualitatively significant segment of the overall episode.").  The reel's use of 1 minute and 9 seconds from the 2 minute and 37 second motel scene, which Bain characterizes as "the most pivotal scene in the Film," presents a closer question.  However, the Ninth Circuit "has acknowledged that this factor will not weigh against an alleged infringer, even when he copies the whole work, if he takes no more than is necessary for his intended use." Seltzer, 725 F.3d at 1178.  Even here, the length of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|----------|----------------------|------|----------------|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

the scene used in the reel serves the purpose of conveying Haid's acting range in a way that a shorter clip from that scene might not. This factor therefore weighs in favor of Haid.

### 4.    Effect of the Use on the Potential Market

This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also 'whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market' for the original." Campbell, 510 U.S. at 590, 114 S. Ct. at 1177, 127 L. Ed. 2d 500 (quoting M. Nimmer & D. Nimmer, 3 Nimmer on Copyright § 13.05[A][4] (1993)). "The enquiry 'must take account not only of the harm to the original but also of harm to the market for derivative works.'" Id. (quoting Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 568, 105 S. Ct. 2218, 2234, 85 L. Ed. 2d 588 (1985)). "Where the allegedly infringing use does not substitute for the original and serves a 'different market function,' such factor weighs in favor of fair use." Seltzer, 725 F.3d at 1179 (quoting Campbell, 510 U.S. at 591, 114 S. Ct. at 1178, 127 L. Ed. 2d 500).

Although Bain characterizes Haid's use as "commercial," because Haid hoped to obtain payment for additional acting jobs she might obtain as a result of the distribution of the reel to casting directors, there is no evidence that Haid ever required payment for her reel or distributed the copy of the Film saved on her Google Drive to anyone other than LA Media for creation of the reel. There is no reasonable probability that distribution of an actor's reel like those prepared for Haid to casting directors—the intended "market" for such a reel—would interfere with the profitability of or market for a film. The Film and the reel serve different market functions. This factor therefore weighs in favor of Haid.

Of the four factors, only the nature of the copyrighted work favors Bain. The remaining factors, based on undisputed facts, weigh decidedly in favor of a finding that Haid's reel was a transformative use of the Film, for a different purpose, using a limited portion of the original work, and without causing a substantial effect on the market for the Film. The Court therefore concludes that Haid's use of the Film for her reel was "fair" for purposes of 17 U.S.C. § 107, and that Haid is entitled to summary judgment on Bain's copyright infringement claims.

### B.    DMCA Claim

In her Complaint, Bain alleged that Haid violated the DMCA by removing the watermark from the copy of the Film prior to distributing Haid's acting reel. In her Motion for Summary

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

Judgment, Haid contends that Bain's DMCA claim fails because Bain has no evidence to satisfy the DMCA's intent requirement. Specifically, the DMCA provides:

> No person shall, without the authority of the copyright owner or the law—
> (1)  intentionally remove or alter any copyright information,
> (2)  distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or
> (3)  distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,
> knowing, or with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement or any right under this title.

17 U.S.C. § 1202(b). The provisions of § 1202(b) "require the defendant to possess the mental state of knowing, or having a reasonable basis to know, that his actions 'will induce, enable, facilitate, or conceal' infringement." Stevens v. Corelogic, Inc., 899 F.3d 666, 673 (9th Cir. 2018).

Contrary to Bain's assertion, Haid's providing a copy of the Film to LA Media through the Google Drive link does not establish even a triable issue of fact that Haid acted with "reasonable grounds to know, that it will induce, enable, facilitate or conceal and infringement," even if that link indicated that Haid was the "owner" of the file. The copy of the Film provided by Haid to LA Media included the watermark that showed it was the property of LesLin Films. Haid did not remove this copyright management information when she provided a copy to LA Media. Nor is there evidence that Haid intentionally altered the copyright information by listing herself as the "owner" of the Google Drive file, as opposed to that information being automatically generated by Google Drive. Bain therefore cannot establish that Haid either intentionally altered the copyright information or that Haid knew or had reasonable grounds to know that being listed as the "owner" of the Google Drive file would induce, enable, facilitate, or conceal infringement.

Moreover, as the Court found in concluding that creation of the reel falls within "fair use," the limited portion of the Film used in the reel is not a substitute for the Film. There is no

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

evidence to support a conclusion that even though the reel deleted the watermark that Haid had reasonable grounds to know that distributing the reel to casting directors could induce, enable, facilitate, or conceal an infringement. Bain's failure to supply any evidence from which a reasonable juror could conclude that Haid acted with the requisite knowledge dooms Bain's DMCA claim. See Stevens, 899 F.3d at 676 ("Because the [plaintiffs] have not put forward any evidence that [the defendant] knew its software carried even a substantial risk of inducing, enabling, facilitating, or concealing infringement, let alone a pattern or probability of such a connection to infringement, [the defendant] is not liable for violating 17 U.S.C. § 1202(b).").

### C.    Timeliness of Haid's Statutory Counterclaims

In her Motion for Summary Judgment challenging Haid's statutory counterclaims for wage and hour and health and safety violations, Bain contends that those claims are barred by California Civil Code section 338's three-year statute of limitations because principal photography ended in 2014, and Bain paid Haid for pick-up shots, the last filming Haid participated in, on May 3, 2015, but Haid did not file her Counterclaim until August 28, 2018. In her Opposition, Haid claims that she continued to do promotional work for the film, for which she never received compensation, in 2016. Haid therefore appears to rely on some version of the continuing violations doctrine to revive her otherwise stale claims. However, neither party cites to or attempts to apply controlling law on either the continuing violations doctrine or the continuous accrual theory. See Aryeh v. Canon Bus. Solutions, Inc., 55 Cal. 4th 1185, 1198-99, 151 Cal. Rptr. 3d 827, 837-38 (2013).

Rather than resolve issues that the parties did not properly raise or sufficiently argue, the Court notes that it has resolved all of the claims over which it possesses original subject matter jurisdiction. The Court possesses only supplemental jurisdiction over all of the claims asserted in Haid's Counterclaim under 28 U.S.C. § 1367(a). Once supplemental jurisdiction has been established under § 1367(a), a district court "can decline to assert supplemental jurisdiction over a pendant claim only if one of the four categories specifically enumerated in section 1367(c) applies." Exec. Software v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1555–56 (9th Cir. 1994). The Court may decline supplemental jurisdiction under § 1367(c) if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." Here, the Court has resolved all of the federal claims over which it has original jurisdiction. Accordingly, the Court declines to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-4126 PA (JEMx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Robin Bain v. Film Independent, Inc., et al. | | |

exercise supplemental jurisdiction over the state law claims raised in Haid's Counterclaim.  See 28 U.S.C. § 1367(c)(3).[3/]

## **Conclusion**

For all of the foregoing reasons, the Court concludes that Haid is entitled to summary judgment on the federal copyright infringement, vicarious and contributory copyright infringement, and DMCA claims asserted by Bain in this action.  The Court declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses those claims without prejudice.  Pursuant to 28 U.S.C. § 1367(d), this Order acts to toll the statute of limitations on the state law claims for a period of thirty (30) days, unless state law provides for a longer tolling period.  As the Court has previously explained to the parties, the attorney time and expense that the parties have expended appear to far exceed the monetary value of either Bain's claims or Haid's counterclaims.  This is, frankly, a dispute that should have been resolved long ago, through arbitration or mutual agreement.  Instead, the parties have unnecessarily taxed both this Court's, and their own, limited resources.  The parties should consider this admonition prior to any party seeking an award of attorneys' fees or pursuing remedies in another court.  Because the Court has resolved or dismissed all of the claims and counterclaims between Bain and Haid, the Court concludes that "there is no just reason for delay" in issuing a Judgment with respect to Bain and Haid, even though Bain has not yet dismissed LA Media after filing a Notice of Settlement.  Fed. R. Civ. P. 54(b) ("When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.").  The Court will issue a Judgment consistent with this Order.

IT IS SO ORDERED.

---

[3/]     It is because the Court declines to exercise supplemental jurisdiction over Haid's counterclaims that the Court denied Haid's Ex Parte Application to Extend the Discovery Cutoff Date.  (Docket No. 136.)  The additional depositions that Haid sought to conduct after the discovery cutoff date related only to the counterclaims.  Because the Court will not be resolving the issues related to the state law claims, the Court concludes that there is no good cause to extend this Court's Civil Trial Scheduling Order to allow additional time for discovery related solely to counterclaims this Court will not resolve.